## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

STATE FARM FIRE AND CASUALTY )
COMPANY, )
                                     )
           Plaintiff, )
                                     )
v. )     Case No. CIV-20-00087-PRW
                                     )
S.H., a minor, by and through his parent and )
next friend, DAVID HARRY; and RANDY )
MCAROY, individually, and as parent )
and next friend of P.M., a minor, )
                                     )
           Defendants. )

## ORDER

This is a declaratory judgment action in which Plaintiff, State Farm Fire and Casualty Company ("State Farm"), seeks a declaration concerning the rights and liabilities of the parties under a State Farm Homeowners Insurance Policy ("Policy") issued to Defendant David L. Harry and Rebekah K. Harry, parents of Defendant S.H., a minor. State Farm has moved for summary judgment (Dkt. 11). Defendant Randy McAroy ("McAroy"), who is the parent of P.M., a minor, has responded in opposition (Dkt. 14), and State Farm has replied (Dkt. 15).

### *Background*

On July 24, 2019, Randy McAroy, individually and as parent and next friend of P.M., a minor ("Underlying Plaintiffs"), filed a lawsuit against S.H., a minor, by and through his parent and next friend, David Harry, and various other defendants, in

1

Oklahoma County District Court ("Underlying Action"). Underlying Plaintiffs filed a Second Amended Petition on August 30, 2019. In the Second Amended Petition, Underlying Plaintiffs allege that in September of 2018, S.H. was an upperclassman participating in the football program at Putnam City West High School. Underlying Plaintiffs contend that S.H., acting in concert with various other students, took P.M. into the varsity locker room against his will, where he was "negligently restrained, assaulted and sodomized" with a broom handle.[1] The Second Amended Petition suggests this was part of a hazing ritual that had occurred in the past and had become a tradition at the school due to Defendant Putnam City West High School's alleged indifference and inadequate supervision. Underlying Plaintiffs seek to recover from S.H., and others allegedly liable for the injuries sustained by P.M., medical expenses incurred, lost income, and punitive damages.

At the time of the incident, State Farm insured the Harrys under a Homeowners Insurance Policy. Subject to its terms and conditions, the Policy extends liability coverage to "bodily injury" and "property damage" caused by an "occurrence," which "means an accident, including exposure to conditions, which results in: a. bodily injury; or b. property damage."[2] The Policy states that all bodily injury and property damage resulting from series of related accidents or from continuous and repeated exposure to the same general

---

[1] Second Am. Pet. (Dkt. 1, Ex. 2) ¶ 9.

[2] Policy (Dkt. 1, Ex. 1) at 10.

conditions is considered to be one occurrence.[3] The Policy, however, excludes harms: (1) either expected or intended by the insured; or (2) which are the result of willful and malicious acts of the insured.[4]

State Farm initiated the instant action in 2020, asking for a declaratory judgment as to its legal obligations under the Policy. State Farm asserts that the alleged conduct of its insured, S.H., cannot be deemed an "occurrence" within the meaning of the terms of its Policy and is otherwise excluded as intentional, meaning coverage does not extend to injuries arising therefrom and all related medical expenses which Underlying Plaintiffs seek to recover. Additionally, State Farm argues that the Policy similarly does not provide coverage for the other types of damages alleged—i.e. loss of income and punitive damages—because they do not fit the definition for bodily injuries or property losses covered under the Policy or are otherwise impermissible as a matter of public policy. Therefore, State Farm seeks a legal declaration that:

(1) There is no coverage under State Farm's Homeowner's Policy for the acts alleged in the Underlying Action.

As such, State Farm further asks this Court to declare that:

(2) State Farm has no duty to indemnify Underlying Defendant S.H., a minor, by and through his parent and next friend, David Harry, for liability he may incur in the Underlying Action;

(3) State Farm has no duty to continue to defend Underlying Defendant, S.H., a minor, by and through his parent and next friend, David Harry, in the Underlying Action, or any other lawsuit or claim arising out of the same material facts as alleged in the Underlying Action; and

---

[3] Policy (Dkt. 1, Ex. 1) at 10.

[4] *Id.* at 25.

(4) State Farm has no duty to satisfy any judgment entered against Underlying Defendant, S.H., a minor, by and through his parent and next friend, David Harry, in the Underlying Action.

State Farm subsequently moved for summary judgment, arguing that there are no genuinely disputed material facts pertaining to specific coverage under the Policy and accordingly, as a matter of law, it is entitled to declaratory judgment as its duties.

McAroy disagrees. In his response, he makes two general arguments. First, McAory contends State Farm's motion is premature. By moving for summary judgement before any depositions or meaningful discovery took place in the Underlying Action, McAroy maintains that there has not been a reasonable opportunity to discover evidence and facts essential to his claims, rendering summary judgment improper at this juncture.

Second, McAroy contends that the summary judgment record is insufficient to support a judgment in State Farm's favor. Neither party cites to any affidavits, admissions, depositions, documents or other materials in support of their respective positions. And, as McAroy suggests, the only materials cited in State Farm's motion—the Policy and the Second Amended Petition—do not establish the absence of a genuine dispute of fact as to issue of coverage. Although the underlying petition appears to describe essentially what happened, the record is allegedly inconclusive as to S.H.'s individual course of conduct and state of mind during the incident. The allegations may suggest that S.H. participated in some intentional conduct—i.e. by helping others force P.M. into the locker room—but McAroy states that the allegations do not identify which individual sodomized P.M. or any specific acts performed by S.H. Moreover, he points out that there are no allegations that S.H. "expected or intended" to injure P.M. or knew anyone else would. McAroy thus

suggests that at least some of S.H.'s alleged conduct may constitute a covered "occurrence" giving rise to the potential of liability under the Policy. And State Farm's presumptions regarding the intentionality of the conduct at issue purportedly cannot, alone, rise to the level of undisputed fact from which to grant judgment as a matter of law.

### *Legal Standard*

Summary judgment is proper only if the moving party shows there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.[5] A fact is "material" if it is essential to the proper disposition of the claim, and a dispute is "genuine" if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way.[6]

If the movant carries the initial burden, the nonmovant must then assert that a material fact is genuinely disputed and must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials"; by "showing that the materials cited [in the movant's motion] do not establish the absence . . . of a genuine dispute"; or by "showing . . . that an adverse party [i.e., the movant] cannot produce

---

[5] Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[6] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998).

admissible evidence to support the fact."[7] "[T]he relevant inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."[8] The Court views the evidence and draws all reasonable inferences therefrom in the light most favorable to the nonmoving party.[9]

Because subject matter jurisdiction for this action is predicated upon diversity of citizenship, the issues before the Court require consideration of Oklahoma law as well as the Policy language.[10] Under Oklahoma law, interpretation of an insurance policy, like any written contract, presents a question of law.[11] In general, when interpreting whether coverage exists, exclusionary provisions are narrowly construed and "words of inclusion are construed in favor of the insured."[12]

---

[7] Fed. R. Civ. P. 56(c)(1); *see also Celotex Corp.*, 477 U.S. at 322.

[8] *Neustrom v. Union Pac. R.R. Co.*, 156 F.3d 1057, 1066 (10th Cir. 1998) (citations omitted).

[9] *Byers v. City of Albuquerque,* 150 F.3d 1271, 1274 (10th Cir. 1998).

[10] *State Farm Fire and Casualty Co. v. Pettigrew*, 180 F. Supp. 3d 925, 931 (N.D. Okla. 2016) ("The interpretation of an insurance contract is governed by state law and, sitting in diversity, we look to the law of the forum state.") (quoting *Houston Gen. Ins. Co. v. Am. Fence Co., Inc.*, 115 F.3d 805, 806 (10th Cir. 1997)).

[11] *May v. Mid-Century Ins. Co.,* 151 P.3d 132, 140 (Okla. 2006) (footnotes omitted).

[12] *Orthopedic Res., Inc. v. Nautilus Ins. Co.*, 654 F. Supp. 2d 1307, 1313 (N.D. Okla. 2009) (quoting *Timmons v. Royal Globe Ins.*, 653 P.2d 907, 913 (Okla. 1982); *see also Utica Mut. Ins. Co. v. Voyles*, 277 Fed. Appx. 809 (10th Cir. 2008) (noting that Oklahoma courts narrowly construe exclusionary provisions).

Moreover, an insurance policy generally contains two basic duties: the duty to defend and the duty to indemnify.[13] The duty to defend is broader than the duty to indemnify and is not limited by "determinable contingencies" or the "outcome of the third-party action."[14] Rather, under Oklahoma law, "[a]n insurer has a duty to defend an insured whenever it ascertains the presence of facts that give rise *to the potential of liability* under the policy."[15] While the initial burden to request a defense is on the insured, once that request is received the insurer bears the burden of investigating the underlying facts and determining whether they trigger coverage.[16] An insurer's duty to defend "cannot be limited by the precise language of the pleadings. *The insurer has the duty to look behind the third party's allegations to analyze whether coverage is possible.*"[17] Finally, although

---

[13] *First Bank of Turley v. Fid. & Deposit Ins. Co. of Maryland*, 928 P.2d 298, 302–03 (Okla. 1996).

[14] *Id.* at 303–04.

[15] *Id.* at 303 (emphasis in original) (internal footnote omitted).

[16] *Id.* at 304.

[17] *Id.* at 303 n.15 (emphasis in original); *see also Utica Mut. Ins. Co.*, 277 F. App'x at 812 ("Oklahoma does not recognize the four-corners rule followed by some courts. A court must look beyond the language of the complaint to determine whether a duty to defend exists."); *Mesa Underwriters Specialty Ins. Co. v. Boot Scooters, LLC*, No. CIV-18-806-R, 2019 WL 4918766, at *2 (W.D. Okla. Oct. 4, 2019). Moreover, "an insurer has a duty to defend even where the facts alleged intentional conduct because at trial the jury could have found the defendant guilty merely of negligence or other nonintentional conduct." *Automax Hyundai S., L.L.C. v. Zurich Am. Ins. Co.*, 720 F.3d 798, 805 (10th Cir. 2013) (citing *Westport Ins. Corp. v. Napoli, Kaiser & Bern*, 746 F. Supp. 2d 502, 508 (S.D.N.Y. 2010)).

an insurer "must defend [its insureds] in Oklahoma state court against all claims" once the duty is triggered, "it need only indemnify claims falling within the policy's scope."[18]

### *Discussion*[19]

The facts here are generally undisputed. The parties appear to stipulate that, based on the allegations in the Second Amended Petition, P.M. suffered injuries in high school when various upperclassmen—including S.H.—forced him into the varsity football locker room, where he was sodomized with a broom handle.

The parties also largely agree on the relevant Policy terms. No one suggests that there is any exclusion barring coverage of harms resulting from hazing activities or sexual abuse specifically. The relevant terms simply state that coverage extends to damages

---

[18] *Utica Mut. Ins. Co.*, 277 F. App'x at 816.

[19] Whether the Court should exercise its power to issue a declaration of rights is a matter committed to the sound discretion of the Court. *See St. Paul Fire & Marine Ins. Co. v. Runyon*, 53 F.3d 1167, 1168 (10th Cir. 1995). As this action seeks declaratory relief, the Court, in considering whether to maintain jurisdiction over the matter, applies the *Mhoon* factors: (1) whether a declaratory action would settle the controversy; (2) whether it would serve a useful purpose in clarifying the legal relations at issue; (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race to *res judicata*"; (4) whether use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and (5) whether there is an alternative remedy which is better or more effective. *See State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979, 983 (10th Cir. 1994). Often when courts in this district exercise their discretion to maintain an insurer's declaratory judgment action, the insurer is not a named party in the underlying state court action that implicates the casualty insurance. *See, e.g.*, *State Farm Fire & Casualty Co. v. Telecomm Consultants, Inc.*, 2017 WL 11556315, at *3 (W.D. Oct. 19, 2017). Here, State Farm is not a party to the Underlying Action. Additionally, upon careful consideration of the *Mhoon* factors, the Court finds that they weigh in favor of exercising jurisdiction over this declaratory action.

caused by an "occurrence." An "occurrence" means "an accident, including exposure to conditions, which results in [] bodily injury."[20] And while the Policy does not define "accident," the parties appear to agree that there is an express exclusion for injuries intended or expected. There are thus only two issues for the Court: (1) whether the Policy covers the specific injuries allegedly suffered; and (2) whether punitive damages may be permitted in this type of case.

The primary dispute in this case is whether the alleged harms arising from the incident fall within the coverage of the Policy. The parties focus their arguments on the applicability of the accident and exclusionary clause issues, which are closely related, and as such will be analyzed concurrently. State Farm contends that the underlying state court claims are not covered under the Harrys' homeowner's policy because the type of misconduct alleged does not amount to an "occurrence" within the meaning of the Policy. State Farm also contends coverage is barred by the exclusionary clause for intentional or expected harms. Absent coverage, State Farm maintains that it is under no obligation to defend or indemnify the Harrys in state court and that it is entitled to summary judgment on these issues. McAroy, in response, asserts that the record is undeveloped, that questions of fact remain as to S.H.'s acts and intent that are material to the coverage and duties determinations, and that even if there isn't sufficient factual support to raise a genuine fact issue, summary judgment is still inappropriate as State Farm's motion is premature.

---

[20] Policy (Dkt. 1, Ex. 1) at 10.

The Court agrees that the summary judgment record is insufficient to support a determination of coverage liability. Whether S.H.'s conduct constitutes a covered "occurrence" requires us to parse the facts surrounding the incident to see whether the injury that resulted was either intentional or expected.[21] But there are no actual facts presently before the Court, just the allegations in the underlying pleadings that do not describe the extent of S.H.'s involvement.[22] Moreover, the Second Amended Petition contains no affirmative allegations as to S.H.'s state of mind in particular during the incident,[23] and State Farm offers no additional facts that preclude the possibility that S.H. was only reckless or negligent, not an intentional tort-feasor.[24]

---

[21] The Policy defines the term "occurrence" in part as an "accident." Under Oklahoma law, an "accident" is "[a]n event that takes place without one's foresight or expectation; an undesigned, sudden and unexpected event, chance, or contingency." *U.S. Fid. & Guar. Co. v. Briscoe*, 239 P.2d 754, 757 (Okla. 1951). The *Briscoe* court defined the term "accidental" as "happening by chance or unexpectedly, undesigned, unintentional, unforeseen, or unpremeditated." *Id.*

[22] The Policy also equates "exposure to conditions" to an accident, which, depending on S.H.'s actual involvement, could, when viewing the current record in McAory's favor, potentially encompass S.H.'s conduct.

[23] The word "intentional" does not appear in the Second Amended Petition. However, it does appear to suggest S.H. was negligent where it says that "P.M., was a freshman at the Putnam City West High School when he was negligently restrained, assaulted and sodomized by Defendants, Dawson Michael McClain, Delbert Johnson, and S.H. while attending Putnam City West High School." Second Am. Pet. (Dkt. 1, Ex. 2) ¶ 9.

[24] McAroy states that "[a]t present, [he] is not in possession" of relevant information on this issue "because no depositions have been taken in the Underlying Action." Def. McAroy's Resp. in Opp'n to Pl. State Farm's Mot. for Summ. J. (Dkt. 14) at 3. McAroy further notes that "[p]resumably, State Farm has taken a recorded statement of its insured, S.H.; however, it has not offered this information to the Court." *Id.* The Court agrees that State Farm does not appear to rely on any such statement in moving for summary judgment. Without such information, State Farm's presumptions considering the intentionality of the

On this record, the Court cannot conclusively say as a matter of law that there is no possibility of coverage under the Policy and declines to make that assumption at this point. State Farm's motion is thus denied as to the issue of coverage. Accordingly, the Court likewise declines to grant summary judgment in favor of State Farm on the issues of its duty to defend, indemnify, and satisfy any judgment.[25]

Finally, State Farm also requests summary judgment on the issue of whether the Policy would cover a punitive damages award.[26] The Court finds that because "[i]n

---

conduct at issue cannot rise to the level of undisputed fact from which to grant judgment as a matter of law.

[25] In Oklahoma, "[a]n insurer has a duty to defend an insured whenever it ascertains the presence of facts that give rise to the potential of liability under the policy." *Turley*, 928 P.2d at 303 (footnote omitted). "Nothing more is required to trigger the duty to defend" where "the facts indicate that [the insured] may have been negligent." *Id.* Thus, on this record, the Court cannot grant summary judgment in State Farm's favor on its duty to defend. Furthermore, "[t]he duty to defend is separate from, and broader than, the duty to indemnify." *Turley*, 928 P.2d at 303–04 (footnotes omitted). The duty to indemnify relates to liability actually imposed on the insured for claims falling within the scope of coverage. Because the Underlying Plaintiffs have yet to establish liability for any claims, the question of State Farm's duty of indemnification is not ripe for adjudication. *See Mount Vernon Fire Ins. Co. v. Okmulgee Inn Venture, LLC*, 451 F. App'x 745, 748–49 (10th Cir. 2011). Nevertheless, the Court points out that State Farm's duty of indemnification will extend only to those claims falling within the scope of the Policy.

[26] In addition to other damages, Underlying Plaintiffs seek to recover alleged "lost income." State Farm requests summary judgment on the issue of whether coverage extends to such damages. It argues that loss of income does not constitute "bodily injury" or "property damage" as defined by the Policy. However, the Policy does not appear to specifically exclude such damages, and the provision requiring insurer to pay for all sums which the insured might become legally obligated to pay otherwise may be sufficiently broad to include liability for loss of income. As such, the Court declines to grant summary judgment in State Farm's favor on this issue.

Oklahoma, insurers are generally not liable for punitive damages imposed against their insureds,"[27] summary judgment is appropriate on this issue.

## *Conclusion*

For the foregoing reasons, State Farm's motion for summary judgment (Dkt. 11) is **DENIED IN PART** as to the foundational issue of coverage and State Farm's potential duties to defend and indemnify, and **GRANTED IN PART** as to the bar on punitive damages.

**IT IS SO ORDERED** this 28th day of March 2022.

 

 

_____
PATRICK R. WYRICK
UNITED STATES DISTRICT JUDGE

---

[27] *Am. Nat'l Prop. & Cas. Co. v. Select Mgmt. Grp., LLC*, 528 F. Supp. 3d 1188, 1200 (N.D. Okla. 2021) (citing *Dayton Hudson Corp. v. Am. Mut. Liab. Ins. Co.*, 621 P.2d 1155, 1158–60 (Okla. 1908)).