IN THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF OKLAHOMA

| STATE FARM FIRE AND CASUALTY COMPANY, | ) ) ) | |
|---|---|---|
| Plaintiff, | ) ) ) | |
| v. | ) ) ) | Case No. CIV-20-87-PRW |
| SETH HARRY, individually; PEYTON MCAROY, individually; and RANDY MCAROY, individually, | ) ) ) ) ) | |
| Defendants. | ) | |

# ORDER

This is a declaratory judgment action in which Plaintiff, State Farm Fire and Casualty Company ("State Farm"), seeks a declaration concerning the rights and liabilities of the parties under a State Farm Homeowners Insurance Policy ("Policy") issued to the parents of Defendant Seth Harry.[1] State Farm has filed its second motion for summary judgment (Dkts. 46, 47),[2] Defendants Peyton and Randy McAroy ("McAroy Defendants") have responded (Dkts. 61, 62), and State Farm has replied (Dkts. 63, 64). For the reasons given below, State Farm's second motion for summary judgment is **GRANTED**.

---

[1] Seth Harry was substituted for his parent, David Harry, as a real party in interest on September 23, 2022 (Dkt. 31).

[2] Pursuant to the Agreed Protective Order (Dkt. 25) and the Court's November 8, 2022, Order (Dkt. 44), the parties have filed both redacted and non-redacted versions of their respective briefs.

1

*Background*

On March 28, 2018, State Farm issued a Homeowners Insurance Policy to David and Rebekah Harry.[3] Subject to its terms and conditions, the Policy extends liability coverage to "bodily injury" and "property damage" caused by an "occurrence," which "means an accident, including exposure to conditions, which results in: a. bodily injury; or b. property damage."[4] The Policy states that all bodily injury and property damage resulting from a series of related accidents or from continuous and repeated exposure to the same general conditions is considered one occurrence.[5] The Policy, however, excludes harms (1) that are either expected or intended by the insured or (2) that are the result of willful and malicious acts of the insured.[6]

The parties agree that in September 2018, while Peyton McAroy was a freshman student at Putnam City West High school ("Putnam"), a group of students assaulted him in the varsity football locker room.[7] According to Peyton's uncontested deposition testimony, Peyton was in the freshman locker room when a student "initially grabbed [him] . . . and

---

[3] The parties agree that, as the Harry's minor son, Seth Harry qualified as an insured under the Policy.

[4] Policy (Dkt. 1, Ex. 1), at 10.

[5] *Id.* at 10.

[6] *Id.* at 25.

[7] The following account is based on the parties' respective statements of undisputed material facts. The McAroy Defendants do not contest Peyton McAroy's testimony regarding how the assault occurred; they contest, however, any conclusion as to Seth Harry's state of mind before and during the assault.

started pushing [him] towards the varsity locker room."[8] Seth then came to the student's aid, grabbing Peyton's feet so that he was "facing up towards the ceiling."[9] As Seth and the other student carried Peyton into the varsity room, Peyton screamed for them to put him down.[10] Seth and the other student, however, called for a teammate to bring a broom.[11] The teammate grabbed the broom he stored in his football locker, approached Peyton, and "subjected [him] to forcible anal sodomy by instrumentation."[12] Seth continued to restrain Peyton during the "brooming" and did not release him until the act was completed.[13]

After the assault, Randy McAroy, individually and as parent and next friend of P.M., a minor ("Underlying Plaintiffs"), filed a lawsuit against Seth Harry and others in Oklahoma County District Court ("Underlying Action").[14] Underlying Plaintiffs seek to recover from Seth Harry and others allegedly liable for the injuries sustained by Peyton, medical expenses incurred, lost income, and punitive damages.

In response to the Underlying Action, State Farm initiated this lawsuit in 2020, seeking a declaration as to its legal obligations under the 2018 Homeowners Insurance

---

[8] Pl.'s Mot. (Dkt. 46), at 3.

[9] *Id.* at 4.

[10] *Id.* at 7.

[11] *Id.* at 4.

[12] *Id.* at 7–8.

[13] *Id.* at 5.

[14] Peyton has since reached majority and has been substituted as a real party in interest in the Underlying Action.

Policy issued to the Harrys.[15] State Farm argues that the Policy does not extend coverage to the damages Underlying Plaintiffs suffered from the forcible anal sodomy that occurred in the school locker room. Thus, State Farm asserts, it has (1) no duty to indemnify Seth Harry for liability he may incur in the Underlying Action; (2) no duty to continue to defend Seth Harry in the Underlying action, or any other lawsuit or claim arising out of the same material facts as alleged in the Underlying Action; and (3) no duty to satisfy any judgment entered against Seth Harry in the Underlying Action. The McAroy Defendants, however, claim that the Policy extends coverage to Peyton's injuries because Seth's actions were an "accident." Seth Harry has not responded in this action, and a default was entered against him under Rule 55(a) of the Federal Rules of Civil Procedure (Dkt. 56).

State Farm filed its first motion for summary judgment over two years ago (Dkt. 11), which was granted in part and denied in part. The Court granted summary judgment on the issue of whether the Policy would cover a punitive-damages award but denied summary judgment on the issues of coverage and State Farm's potential duties to defend and indemnify (Dkt. 16). Because there were no facts before the Court (only the Policy and the pleadings in the Underlying Action), and especially since the issue of coverage liability hinges on whether Seth's actions were an "accident," the Court concluded that the

---

[15] Whether the Court should exercise its power to issue a declaration of rights is a matter committed to the sound discretion of the Court. *See St. Paul Fire & Marine Ins. Co. v. Runyon*, 53 F.3d 1167, 1168 (10th Cir. 1995). In an Order entered on March 28, 2022, the Court analyzed the factors from *State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979, 983 (10th Cir. 1994), and found that those factors weighed in favor of exercising jurisdiction over this declaratory action. *See* Order (Dkt. 16), at 8 n.19.

4

summary judgment record was insufficient to support a determination of coverage liability. Without affidavits, admissions, depositions, documents, or other materials in support of their respective positions, "State Farm's presumptions considering the intentionality of the conduct at issue [could not] rise to the level of undisputed fact from which to grant judgment as a matter of law."[16] More than two years later, State Farm has filed a second motion for summary judgment, this time supported with deposition testimony. The Court now considers that motion.

### *Legal Standard*

Federal Rule of Civil Procedure 56(a) requires "[t]he court [to] grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In deciding whether summary judgment is proper, the Court does not weigh the evidence and determine the truth of the matter asserted, but instead determines only whether there is a genuine dispute for trial before the factfinder.[17] The movant bears the initial burden of demonstrating the absence of a genuine, material dispute and an entitlement to judgment.[18] A fact is "material" if, under the substantive law, it is essential to the proper disposition of the claim.[19] A dispute

---

[16] Order (Dkt. 16), at 10–11 n.24.

[17] *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Birch v. Polaris Indus., Inc.*, 812 F.3d 1238, 1251 (10th Cir. 2015).

[18] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[19] *Anderson*, 477 U.S. at 248; *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998).

is "genuine" if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way.[20]

If the movant carries its initial burden, the nonmovant must then assert that a material fact is genuinely disputed and must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials"; by "showing that the materials cited [in the movant's motion] do not establish the absence . . . of a genuine dispute"; or by "showing . . . that an adverse party [i.e., the movant] cannot produce admissible evidence to support the fact."[21] The nonmovant does not meet its burden by "simply show[ing] there is some metaphysical doubt as to the material facts"[22] or theorizing a plausible scenario in support of its claims. Instead, "the relevant inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."[23] And as the Supreme Court explained, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment,"[24]

---

[20] *Anderson*, 477 U.S. at 248; *Adler*, 144 F.3d at 670.

[21] Fed. R. Civ. P. 56(c)(1); *see also Celotex Corp.*, 477 U.S. at 322.

[22] *Neustrom v. Union Pac. R.R. Co.*, 156 F.3d 1057, 1066 (10th Cir. 1998) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

[23] *Neustrom*, 156 F.3d at 1066 (quoting *Anderson*, 477 U.S. at 251–52); *Bingaman v. Kan. City Power & Light Co.*, 1 F.3d 976, 980 (10th Cir. 1993).

[24] *Liberty Lobby*, 477 U.S. at 247–48.

since "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"[25] Thus, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."[26] The Court views the evidence and draws all reasonable inferences therefrom in the light most favorable to the nonmoving party.[27]

Because subject matter jurisdiction for this action is predicated upon diversity of citizenship, the issues before the Court require consideration of Oklahoma law as well as the Policy language.[28] Under Oklahoma law, interpretation of an insurance policy, like any written contract, presents a question of law.[29] In general, when interpreting whether coverage exists, exclusionary provisions are narrowly construed and "words of inclusion are construed in favor of the insured."[30] "The first step in coverage analysis is to determine

---

[25] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

[26] *Scott v. Harris*, 550 U.S. 372, 381 (2007).

[27] *Byers v. City of Albuquerque*, 150 F.3d 1271, 1274 (10th Cir. 1998).

[28] *State Farm Fire and Casualty Co. v. Pettigrew*, 180 F. Supp. 3d 925, 931 (N.D. Okla. 2016) ("The interpretation of an insurance contract is governed by state law and, sitting in diversity, we look to the law of the forum state.") (quoting *Houston Gen. Ins. Co. v. Am. Fence Co., Inc.*, 115 F.3d 805, 806 (10th Cir. 1997)).

[29] *May v. Mid-Century Ins. Co.*, 151 P.3d 132, 140 (Okla. 2006) (footnotes omitted).

[30] *Orthopedic Res., Inc. v. Nautilus Ins. Co.*, 654 F. Supp. 2d 1307, 1313 (N.D. Okla. 2009) (quoting *Timmons v. Royal Globe Ins.*, 653 P.2d 907, 913 (Okla. 1982)); *see also Utica Mut. Ins. Co. v. Voyles*, 277 F. App'x 809 (10th Cir. 2008) (noting that Oklahoma courts narrowly construe exclusionary provisions).

if the insuring agreement in the policy extends coverage to the damages sought to be recovered from the insured."[31] "If coverage is extended, the next step is to determine if policy exclusions apply, thereby negating coverage."[32] And it is a "basic rule of insurance law" that "the insured has the burden of showing that a covered loss has occurred, while the insurer has the burden of showing that a loss falls within an exclusionary clause of the policy."[33] "Therefore, summary judgment in favor of the insurer is proper when the undisputed facts show that the insured has failed to establish a covered claim under its insurance policy."[34]

An insurance policy also generally contains two basic duties: the duty to defend and the duty to indemnify.[35] The duty to defend is broader than the duty to indemnify and is not limited by "determinable contingencies" or the "outcome of the third-party action."[36]

---

[31] *State Farm Fire & Cas. Co. v. Aberdeen Enterprizes II, Inc.*, 2020 WL 4550390, at *3 (N.D. Okla. 6, 2020) (citing *Dodson v. St. Paul Ins. Co.*, 812 P.2d 372, 377 (Okla. 1991)).

[32] *Id.* at *3.

[33] *Pitman v. Blue Cross & Blue Shield of Oklahoma*, 217 F.3d 1291, 1298 (10th Cir. 2000).

[34] *Phoenix Ins. Co. v. Winton*, No. CIV-14-95-R, 2015 WL 874371, at *2 (W.D. Okla. Feb. 27, 2015), *aff'd sub nom. Universal Underwriters Ins. Co. v. Winton*, 818 F.3d 1103 (10th Cir. 2016).

[35] *First Bank of Turley v. Fid. & Deposit Ins. Co. of Maryland*, 928 P.2d 298, 302–03 (Okla. 1996).

[36] *Id.* at 303–04. The relevant Policy provision is as follows:

> If a claim is made or a suit is brought against an insured for damages because of bodily injury or property damage *to which this coverage applies*, caused by an occurrence, we will:
>
> 1.   pay up to our limit of liability for the damages for which the insured is legally liable; and
>
> 2.   provide a defense at our expense by counsel of our choice. We may make any investigation and settle any claim or suit that we decided is appropriate.

Rather, under Oklahoma law, "[a]n insurer has a duty to defend an insured whenever it ascertains the presence of facts that give rise to the potential of liability under the policy."[37] While the initial burden to request a defense is on the insured, once that request is received the insurer bears the burden of investigating the underlying facts and determining whether they trigger coverage.[38] An insurer's duty to defend "cannot be limited by the precise language of the pleadings. *The insurer has the duty to look behind the third party's allegations to analyze whether coverage is possible.*"[39] Finally, although an insurer "must defend [its insureds] in Oklahoma state court against all claims" once the duty is triggered, "it need only indemnify claims falling within the policy's scope."[40]

---

> Our obligation to defend any claim or suit ends when the amount we pay for damages, to effect settlement or satisfy a judgment resulting from the occurrence, equals our limit of liability.

Policy (Dkt. 1, Ex. 1), at 24 (emphasis added).

[37] *First Bank of Turley*, 928 P.2d at 303 (emphasis in original) (internal footnote omitted).

[38] *Id.* at 304.

[39] *Id.* at 303 n.15 (emphasis in original); *see also Utica Mut. Ins. Co.*, 277 F. App'x at 812 ("Oklahoma does not recognize the four-corners rule followed by some courts. A court must look beyond the language of the complaint to determine whether a duty to defend exists."); *Mesa Underwriters Specialty Ins. Co. v. Boot Scooters, LLC*, No. CIV-18-806-R, 2019 WL 4918766, at *2 (W.D. Okla. Oct. 4, 2019). Moreover, "an insurer has a duty to defend even where the facts alleged intentional conduct because at trial the jury could have found the defendant guilty merely of negligence or other nonintentional conduct." *Automax Hyundai S., L.L.C. v. Zurich Am. Ins. Co.*, 720 F.3d 798, 805 (10th Cir. 2013) (citing *Westport Ins. Corp. v. Napoli, Kaiser & Bern*, 746 F. Supp. 2d 502, 508 (S.D.N.Y. 2010)).

[40] *Utica Mut. Ins. Co.*, 277 F. App'x at 816.

*Discussion*

The Policy at issue extends liability coverage to bodily injury caused by an "occurrence."[41] An "occurrence" is defined, in relevant part, as an "accident."[42] State Farm's motion for summary judgment thus depends on whether the actions resulting in bodily injury to Peyton McAroy were an "accident" under Oklahoma law.[43]

Under Oklahoma law, an "accident," as that term is used in a liability-insurance policy, is "[a]n event that takes place without one's foresight or expectation; an undesigned, sudden and unexpected event, chance, contingency."[44] An event is "accidental" when it "happen[s] by chance or unexpectedly" or when it is "undesigned; unintentional; unforeseen, or unpremeditated."[45] To show that there is no genuine dispute about whether Peyton's injuries resulted from an accident, State Farm relies on (1) the undisputed facts, (2) Peyton's deposition testimony, and (3) Seth's written statement concerning the incident.

The parties agree on the following facts, which are based on Peyton's deposition testimony and Seth's written statement to the school:

---

[41] Policy (Dkt. 1, Ex. 1), at 24.

[42] *Id.* at 11.

[43] "[T]he applicable coverage provisions regarding 'an accident' refer to *the cause* of the injuries, or to the victim's *exposure to conditions which result in* injuries; the coverage provisions do not refer to "accidental *injuries*." *Shelter Mut. Ins. Co. v. Dennis Clark*, No. CIV-06-0753-F, 2007 WL 427942, at *4 (W.D. Okla. Feb. 5, 2007*), aff'd sub nom. Shelter Mut. Ins. Co. v. Wheat*, 313 F. App'x 76 (10th Cir. 2008) (interpreting a nearly identical definition of an "occurrence" in an insurance policy) (emphasis in original).

[44] *U.S. Fidelity & Guaranty Co. v. Briscoe*, 239 P.2d 754, 757 (Okla. 1951).

[45] *Id.*

- In September 2018, Peyton was a freshman football player at Putnam.[46]

- There was a ritual or tradition at Putnam in which the best lineman on the varsity football team would sodomize a freshman football player with a broomstick, and the ritual or tradition was known as "brooming."[47]

- On September 28, 2018, a student on the varsity football team "grabbed [Peyton] . . . and started pushing [him] toward the varsity locker room."[48]

- Seth joined that student, and together they carried Peyton into the varsity locker room against his will.[49]

- Peyton was "yelling and screaming" at Seth and the other student to put him down.[50]

- Peyton testified that Seth and the other student called for a teammate to get a broom.[51]

- The teammate then retrieved a broom he usually stored in his football locker.[52]

- The teammate approached Peyton while Seth and other students held him in the air facing the ceiling.[53]

- The teammate subjected Peyton to "forcible anal sodomy by instrumentation."[54]

---

[46] Pl.'s Mot. (Dkt. 46), at 7; Defs.' Resp. (Dkt. 61), at 7.

[47] Pl.'s Mot. (Dkt. 46), at 7; Defs.' Resp. (Dkt. 61), at 7.

[48] Pl.'s Mot. (Dkt. 46), at 7; Defs.' Resp. (Dkt. 61), at 7.

[49] Pl.'s Mot. (Dkt. 46), at 7; Defs.' Resp. (Dkt. 61), at 7.

[50] Pl.'s Mot. (Dkt. 46), at 11; Defs.' Resp. (Dkt. 61), at 8–9.

[51] Pl.'s Mot. (Dkt. 46), at 8; Defs.' Resp. (Dkt. 61), at 7–8.

[52] Pl.'s Mot. (Dkt. 46), at 14; Defs.' Resp. (Dkt. 61), at 7–8.

[53] Pl.'s Mot. (Dkt. 46), at 11–12; Defs.' Resp. (Dkt. 61), at 8–9.

[54] Pl.'s Mot. (Dkt. 46), at 12; Defs.' Resp. (Dkt. 61), at 8.

- Seth and the other students did not release Peyton until after the teammate had completed the act.[55]

- Peyton testified three times that the incident was not an accident.[56]

State Farm argues that these undisputed facts show that Peyton's injuries did not result from an "accident" under Oklahoma law. The McAroy Defendants, however, assert that these facts cannot support a determination of Seth's subjective intent. According to the McAroy Defendants, the undisputed facts do not reveal whether Seth intended the assault, whether he knew of the "brooming" ritual or tradition beforehand, whether he heard Peyton screaming for Seth to put him down, or whether Seth understood what was "going to happen." The McAroys also note that Seth was not the one to "broom" Peyton and that Peyton testified he didn't know whether the assault was "intentional."[57] For these reasons, the McAroy Defendants argue, there is a genuine dispute about whether Peyton's bodily injuries resulted from "accidental" conduct.[58]

---

[55] Pl.'s Mot. (Dkt. 47), at 15; Defs.' Resp. (Dkt. 61), at 7.

[56] Pl.'s Mot. (Dkt. 47, Ex. 2), at 10–11.

[57] When Peyton responded that he didn't know whether he was "intentionally" assaulted, he continued that it was "no accident." And although Peyton said he didn't know what Seth's intensions were, Peyton also agreed that Seth's intentions were "harmful." Pl.'s Mot. (Dkt. 47, Ex. 2), at 8, 11, 17.

[58] The McAroy Defendants also emphasize that the Court's March 28, 2022, Order (Dkt. 16) stated that "the Second Amended Petition contains 'no affirmative allegations as to S.H.'s state of mind in particular during the incident, and State Farm offers no additional facts that preclude the possibility that S.H. was only reckless or negligent, not an intentional tort-feasor.'" But the Court's Order merely noted that, at that early stage of litigation, the summary judgment record consisted only of the parties' briefs, the Policy, and the Second Amended Complaint from the Underlying Action. Without depositions, affidavits, admissions, or other materials, the record was insufficient for the Court to determine whether Seth's conduct was accidental. Now, however, the summary judgment record

The Court agrees with State Farm that the undisputed facts, as supported by Peyton's deposition testimony and Seth's written statement to Putnam, show that State Farm is entitled to judgment as a matter of law. Based on the undisputed facts, no reasonable jury could believe that Peyton's bodily injuries resulted from an "accident."[59] The undisputed facts are "so one-sided that [State Farm] must prevail as a matter of law,"[60] and the McAroy Defendants have raised only a "metaphysical doubt as to the material facts."[61] State Farm has thus carried its burden to demonstrate that there is no genuine dispute for the factfinder to resolve.[62] Because Seth's conduct was not an accident, the Policy does not extend coverage to Peyton's injuries resulting from that conduct.[63]

---

includes deposition testimony from both Peyton McAroy and Seth Harry. So the McAroys' argument is misplaced.

[59] Much of the parties' briefs discuss whether the issue of coverage should be viewed from the standpoint of the insured. But even viewing the undisputed facts from Seth Harry's perspective, no reasonable jury could find that his conduct was an accident. The undisputed facts show that Peyton's injuries were a foreseeable result of Seth's actions. *See Automax Hyundai S., L.L.C.*, 720 F.3d at 804 (stating that, under Oklahoma law, "a voluntary action resulting in *foreseeable* injury [is] not an 'accident'"). What is more, the McAroy Defendants haven't pointed to any evidence in the record to suggest that Seth's actions were, in fact, accidental.

[60] *See Neustrom*, 156 F.3d at 1066 (quoting *Anderson*, 477 U.S. at 251–52).

[61] *See id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

[62] This case is currently set for a non-jury bench trial on the Court's January 2023 trial docket.

[63] Having determined that the Policy doesn't extend coverage to Peyton's injuries, the Court need not address whether the Policy exclusions apply.

*Conclusion*

State Farm has carried its burden to show that it is entitled to judgment as a matter of law. There is no genuine dispute about whether Seth Harry's actions in the varsity locker room were an "accident." And because the Policy does not extend coverage to injuries resulting from non-accidental conduct, the Court concludes that State Farm has (1) no duty to indemnify Seth Harry for liability he may incur in the Underlying Action; (2) no duty to continue to defend Seth Harry in the Underlying action, or any other lawsuit or claim arising out of the same material facts as alleged in the Underlying Action;[64] and (3) no duty to satisfy any judgment entered against Seth Harry in the Underlying Action. State Farm's second motion for summary judgment (Dkts. 46, 47) is thus **GRANTED**.

**IT IS SO ORDERED** this 21st day of December 2022.

PATRICK R. WYRICK
UNITED STATES DISTRICT JUDGE

---

[64] *See* Steven Plitt et al., 14 *Couch on Ins.* § 200:49 (3d ed. Supp. 2022) ("A declaratory judgment of no coverage, either by summary judgment or after trial, does not retroactively relieve the primary insurer of the duty to defend, and it only relieves the insurer of the obligation to continue to defend after the declaration.").